460

Carlton THORNHILL

v.

C. C. PEYTON, Superintendent, Virginia
State Penitentiary.

Civ. A. No. 67-C-38-L.

United States District Court
W. D. Virginia,
at Lynchburg.

Aug. 27, 1969.

---

## OPINION AND JUDGMENT

WIDENER, District Judge.

This case is on petition for habeas corpus of Carlton Thornhill filed *in forma pauperis,* and comes to this court on remand from the Court of Appeals for the Fourth Circuit for the sole question of " * * * a determination of Thornhill's sanity at the time of the trial, either on the basis of an adequate state record or a hearing." Thornhill v. Peyton, Memorandum Decision, C.A.4, April 11, 1969. The instant case has previously been reported in this court as 285 F.Supp. 104 (1968).

Carlton Thornhill brutally murdered Junius Gordon and Sarah Gordon, December 15, 1958, in Amherst County, Virginia. He had previously been con-victed for rape and assault. A warrant was issued for Thornhill December 16, 1958. He was indicted in the Circuit Court of Amherst County, February 9, 1959, at which time the court appointed two attorneys to represent him in the case. These attorneys gave him excellent representation.

Also, on February 9, 1959, on motion of the accused with the consent of the Commonwealth, the court ordered Thornhill committed to Central State Hospital, Petersburg, Virginia, for care and observation in accordance with Virginia Code Section 19-202 (now a part of Section 19.1-228). Virginia law provides that no person shall, while he is insane, be tried for a criminal offense, and gives the court the alternative of committing the accused to a state hospital for determination of his mental condition or impaneling a jury to pass upon it. See Virginia Code Sections 19-201, 202, 203, and 204 in effect in 1959 (now included in Virginia Code Sections 19.1-227, 228, 229, and 230), and Delp v. Commonwealth, 172 Va. 564, 200 S.E. 594 (1939).

The accused was committed to Central State Hospital which reported to the court from time to time on his condition. After a report on April 2, 1959, that its findings were incomplete, the hospital reported on May 12, 1959, that it had reasonable doubt as to Thornhill's ability to properly stand trial, but that the mental illness was not of such severity as to render him legally insane under the M'Naghten rule. The court on May 23, 1959, advised the hospital that it could not reconcile the two opinions in the hospital's letter of May 12th. On July 13, 1959, the hospital again reported to the court stating that in its opinion Thornhill was not insane at the time of the murder, although he may have been drinking; that he was not psychotic; that he was capable of understanding the charges against him; and that he was capable of comprehending court proceedings and of cooperating with counsel to the best of his limited intelligence.

Thornhill was returned to Amherst County and tried by jury September 29, 1959. He was found guilty of the murder of Gordon, and was sentenced to life imprisonment. Four months later, on January 26, 1960, he pleaded guilty to the murder of Sarah Gordon, and was sentenced to a second term of life imprisonment by the court. The evidence in the first trial was referred to in the second.

At the trial for murder in Amherst County, the issues of Thornhill's sanity at the time of the murder and at the time of the trial were both thoroughly explored. The written reports of Central State Hospital were considered, as were the written reports of the hospital staff concerning Thornhill. Although the trial court had chosen the alternative of committing Thornhill to a hospital for examination and report, it, nevertheless, at the trial allowed extensive examination into Thornhill's present mental capacity and submitted this issue to the jury as well as the issue of Thornhill's sanity at the time of the commission of the offense.

The jury was instructed that it could have found Thornhill not guilty by reason of insanity, or not guilty by reason of feeble-mindedness, or it could have found him insane, or it could have found him feeble-minded.[1]

In addition to several local lay witnesses who knew Thornhill, there were seven physicians who testified at the trial: two local doctors who had seen Thornhill while he was in jail in December 1958, and five who had seen Thornhill during the time he was confined in Central State Hospital awaiting trial. A graduate psychologist and three employees of Central State Hospital also testified concerning his condition. Thornhill called ten witnesses as to his mental condition including four physicians.

The trial court allowed wide latitude in the examination and cross-examination of the witnesses with reference to Thornhill's mental condition, both at the time of the offense and at the time of the trial.

The evidence from the medical witnesses was in some conflict as to whether or not Thornhill was mentally capable of standing trial, but was in agreement that he knew right from wrong and realized the consequences of his act. The medical testimony was also in conflict as to whether or not Thornhill was properly able to care for himself. The weight of the lay testimony concerning Thornhill's mental condition was to the effect that he was sane and responsible. All the evidence and medical reports in the record agree that Thornhill was of limited intelligence.

This court is of opinion that Thornhill was treated fairly by the trial court under Virginia law which has been described as humane legislation in Thomas v. Cunningham, 313 F.2d 934, 939 (1963). The transcripts of the murder trials in the Circuit Court of Amherst County have been filed as a part of the record in this case and have been considered in their entirety. The Circuit Court of Amherst County which was the trier of fact, after a full and fair hearing, found that Thornhill was legally sane at the time of the trials and legally sane at the time of the offenses. The record shows conclusively that Thornhill's claims of incompetence were adequately explored at the time of his trials so that no further hearing is required.

[1]    Instruction F
The Court instructs the jury that if you find the accused was insane, or feeble-minded at the time of the commission of the crime alleged in the indictment, you shall find the accused not guilty and shall state your verdict as Not Guilty by reason of insanity, or feeble-mindedness, as the caes may be.

Instruction I
The Court instructs the jury that if you have a reasonable doubt as to the prisoner's sanity [or] feeble-mindness (sic), you shall find him to be either insane or feeble-minded as the case may be.

Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

One further fact is worthy of comment. Thornhill's attorneys obviously recognized from the moment they were appointed the fact that they might have two defenses in the case: first, that Thornhill was legally insane at the time of the act; and second, that he might be legally insane at the time of the trial. They took the proper action, called the proper witnesses, and fought the case every step of the way.

It is the opinion of this court that the petitioner had a full and fair hearing in the Circuit Court of Amherst County on the question of whether or not he was sane at the time of the trial.

Accordingly, it is hereby adjudged and ordered that the petition for habeas corpus be, and the same hereby is, dismissed.